McCORD, Chief Judge.
This appeal is from a final judgment in a negligence action awarding appellant $4,000 damages against appellees. We affirm.
On August 24, 1973, appellant was injured while installing a new blade on a bush hog mower for James D. Millican of appel-lee, Pine Island Fish Camp, Inc. While one wheel of the mower was propped up and appellant was under the mower installing the blade, the wheel fell off its block, causing the mower to fall upon appellant striking the right side of his face and continuing across the left side of his upper chest pinning him underneath. Dr. Wilbert R. Suggs, who treated appellant, testified that he complained of injury to the left upper chest and left shoulder area which included the side of his neck. He observed bruises to the left chest extending from appellant’s collarbone down to the nipple of his breast and found that appellant was tender both in this area and the area at the base of his neck. In addition, appellant had a bruise on his right jaw. He was seen by Dr. Suggs on four occasions through September 24, 1973, at which time appellant was still complaining of pain in his neck and shoulder area and stated that the third and fourth fingers on his left hand were feeling numb.
*981 Dr. Earl Risbeck later treated appellant for unrelated physical complaints. On December 9, 1974, (over one year and three months after the accident) appellant complained to Dr. Risbeck that his hands were falling asleep and that his right shoulder and neck felt odd. Dr. Risbeck found weakness in appellant’s right hand and felt that there was probably a cervical disc problem but did not attempt to determine the etiology. He referred appellant to a neurological surgeon, Dr. James V. Freeman. On April 2, 1975, Dr. Freeman performed a cervical fusion operation on appellant.
Appellant contends that the trial court erred in excluding the deposition of Dr. Freeman and in refusing to instruct the jury on the elements of damages for permanent injury.
In the interim period between the bush hog accident and appellant’s treatment by Dr. Freeman, he was involved in two accidents. The first was in September, 1973, about a month after the bush hog accident, when he backed his car from a convenience store parking lot across a street and into a stationary car. The second occurred in August of 1974 when appellant was drilling a well, and the pipe got away from him. He was “trying to keep that whipping pipe from getting me when it went down the well casing.” He grabbed hold of it, and he testified that “it caught pretty fast.” Dr. Risbeck, who treated him on that occasion, testified that appellant received deep friction burns of both hands through the full thickness of the skin; that “it pretty well took off some of the hide in the palms of his hands” — “there was subcutaneous tissue visible in the center.”
In Dr. Freeman’s deposition, which the trial court ruled inadmissible, he testified that when he first saw appellant on December 11, 1974, he tentatively evaluated his condition as degenerative disc disease. This was subsequently confirmed by a myelo-gram as degenerative cervical disc disease with osteophyte or bony ridge formation around the degenerative discs formation. Dr. Freeman described degenerative disc disease as follows:
“It is a disease that all of us will have some degree of or another as we age in our lumbar and cervical spine and elsewhere in our spine as well. It is an aging process that occurs in some people prematurely where the discs lose their normal elasticity, and soften and changes occur around the joint where this has happened with some overgrowth of bone at the margin of the disc joints, which we term osteophytes, and we term them osteo-phytes throughout the spine wherever they occur. In the cervical area, these osteophytes may project far enough laterally to either side, where that growth can impinge on the natural opening for the nerve root to exist from the spine and cause pressure.”
The doctor was asked whether or not he had an opinion based upon reasonable medical probability as to whether or not the bush hog accident had caused the degenerative disc disease and osteophyte formations. He replied that he did and said:
“I don’t feel that the accident that he alluded to when first taking his history caused his degenerative disc disease. I feel that the degenerative disc is present with or without trauma. And judging from the appearance from what we saw in Mr. O’Neal’s neck surgically, that the disease certainly predated, even though we don’t have an exact date of, that accident. Certainly it predated the approximate time that he had given as the date of his accident.”
He further testified:
“Well, we see patients that come to our office with complaints in the same line and ultimately with the same type diagnosis that Mr. O’Neal had that simply became symptomatic with no apparent cause. Just wake up with it in the morning. We also see patients that come in that we are quite sure became symptomatic, even though the disease in both of these patients may be exactly at the same state of progression, following traumatic episodes. So I don’t think that there is any doubt that trauma can produce symp *982 toms from a disease that is present and that otherwise was asymptomatic.”
The doctor further testified that as far as causative reason for appellant’s trouble, he really did not have an opinion. He testified that it is possible for appellant’s degenerative disc disease to have been related to a trauma-type accident.
Appellant contends Dr. Freeman’s deposition was admissible; that it is not necessary for its admission that the doctor express an opinion with reasonable medical certainty that the bush hog accident caused his degenerative disc disease; that it is sufficient that the doctor testified that it is possible that his condition resulted from trauma. We disagree. The Supreme Court in Cone v. Inter County Telephone & Telegraph Co., 40 So.2d 148 (Fla.1949), said:
“. . . The responsibility of a tort-feasor for the consequences of his negligent acts must end somewhere, and under our legal system the liability of the wrongdoer is extended only to the reasonable and probable, not the merely possible, results of a dereliction of duty . . . . ”
Appellant relies upon Eli Witt Cigar & Tobacco Co. v. Matatics, 55 So.2d 549 (Fla.1951). Unlike the case sub judice, however, in Eli Witt the evidence warranted an inference of proximate cause and effect between the accident and the injured person’s condition. Here such an inference is not warranted in view of the lapse of time between the injury and the symptoms of the degenerative disc disease and further in view of the speculatory nature of a conclusion first that the disease resulted from trauma, and second as to the trauma which caused it, the trauma of the bush hog accident being only one of three traumas experienced by appellant.
As to appellant’s subcontention that the court erred in refusing to instruct the jury on the elements of damages for permanent injury, we find no error. His permanent injury only related to degenerative disc disease, the evidence of which was properly disallowed.
As to appellant’s further contention that the trial court erred in ruling his medical bills from Dr. Freeman inadmissible, we find no error. Appellant argues that since he (appellant) testified the bills were incurred as a result of the bush hog accident, the bills should have been admitted. It is only when the resulting injury is obvious, however, that medical bills have been admitted without expert testimony. See Merola v. Stang, 130 So.2d 119 (Fla. 3 DCA 1961). Dr. Freeman’s medical bills are inadmissible for the same reason that his deposition is not admissible.
We have considered the point raised by appellees in their cross-appeal and find it to be without merit.
AFFIRMED.
MELVIN, J., and FAY, LAWRENCE D., Associate Judge, concur.